**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

UPOFLOOR AMERICAS, INC.,

        Plaintiff,

v.                                          Case No. 6:16-cv-179-Orl-37DCI

S SQUARED SUSTAINABLE
SURFACES, LLC,

        Defendant.

---

## ORDER

This cause is before the Court on:

1.    Defendant's Motion to Dismiss Second Amended Complaint and Incorporated Memorandum of Law (Doc. 15), filed May 2, 2016; and

2.    Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Second Amended Complaint (Doc. 26), filed June 3, 2016.

Upon consideration, the Court finds that Defendant's motion is due to be denied.

## BACKGROUND[1]

This action arises from a contractual dispute between Upofloor Americas, Inc. (**"Upofloor"**) and S Squared Sustainable Surfaces, LLC ("**S2LA**").

Upofloor is the North and South American distributor of European commercial floor products manufactured by Upofloor OY, a Finland company (**"Upofloor Finland"**).

---

[1] This account of the facts is taken from Upofloor's Second Amended Complaint (Doc. 12 ("**Complaint**")), the allegations of which the Court must accept as true in considering S2LA's Motion to Dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992).

(Doc. 12, ¶¶ 2, 5.) Prior to 2013, Upofloor Finland sold its flooring products in the United States through a private label agreement with several independent distributors, including CBCA Flooring (**"CBCA"**). (Doc. 8, ¶ 5.) The Upofloor product was sold under one of CBCA's brand names, Ceres Sequoia. (*Id.*) The Upofloor product was well known and preferred by many project designers and end-customers. (*Id.* ¶ 6.) Indeed, "Kaiser Permanente ("**Kaiser**"), a medical provider and builder of hospitals and medical centers in California and other areas, had for many years prior to the Agreement specified the Upofloor product marketed under the CBCA private label for its hospitals and medical centers." (*Id.* ¶ 7.)

In 2013, Upofloor Finland and CBCA severed their contractual relationship. (*Id.* ¶ 8.) Upofloor then entered the United States market directly, and CBCA obtained a new Taiwanese manufacturer for its private label brands, including Ceres Sequoia. (*Id.*) On October 1, 2013, Upofloor and S2LA entered into an independent contractor agreement, whereby S2LA agreed to use its best efforts to market and sell Upofloor's products in the southern California area (**"SCA"**) in exchange for a commission on its completed sales. (*See id.* ¶¶ 9–12; *see also* Doc. 26-1 (the "**Agreement**").) "As part of its best efforts obligation, S2LA agreed that a reasonable sales budget number for Upofloor products in 2014 was $348,000.00." (Doc. 12, ¶ 14.)

The following year, Upofloor discovered that S2LA had begun promoting the line of Taiwanese-manufactured Ceres Sequoia flooring produced by Upofloor's competitor, CBCA. (*Id.* ¶ 15.) Due to S2LA's underperformance in sales during 2014, Upofloor expressed concerns about S2LA's relationship with CBCA; however, S2LA promised Upofloor that its relationship with CBCA would not affect its sales of Upofloor products.

(*Id.* ¶ 16.) Additionally, S2LA reassured Upofloor that it would "promote Upofloor products over and above those of [CBCA]," and that "if Upofloor did not terminate them, S2LA would hit $750,000.00 in sales for 2015." (*Id.*) Based on S2LA's assurances, Upofloor did not terminate the Agreement. (*Id.* ¶ 17.) Instead, it agreed to wait for the results of S2LA's performance in 2015. (*Id.*)

"During approximately the first six months of 2015, S2LA made zero, or almost zero, sales of Upofloor products." (*Id.* ¶ 18.) At this time, Upofloor also came to learn that S2LA was not using its best efforts to sell and market Upofloor products. (*Id.*) Rather, S2LA was primarily marketing CBCA products. (*Id.*) Consequently, in June of 2015, Upofloor approached S2LA about the lack of sales and inquired as to why S2LA had not sold as many products as it had previously promised. (*Id.* ¶ 19.) In response, S2LA informed Upofloor "that it was meeting with project designers, architects," and properly marketing the Upofloor products in SCA. (*Id.*) S2LA projected that it would produce about 1.2 million in sales of Upofloor products in 2016 if Upofloor did not terminate the Agreement. (*Id.*)

Initially, S2LA's sales performance improved. (*See id.* ¶ 20.) However, virtually all the sales came from "Kaiser projects, which had previously been specified for [CBCA,] a private label product." (*Id.*) "Upofloor knew . . . that Kaiser had allegedly been experiencing problems with the Taiwanese-manufactured Ceres Sequoia brand, and that sales by S2LA were most likely a result of Kaiser using its own discretion to replace the [CBCA] product and not a direct result of any activity by S2LA." (*Id.* ¶ 21.) Moreover, as 2015 continued, S2LA's sales remained dismal and fell well below Upofloor's expectations for the SCA. (*Id.* ¶¶ 22, 23.) (*Id.*) Indeed, in 2015, S2LA had only sold about

$280,000 in products. (*Id.*) Consequently, on December 1, 2015, Upofloor provided S2LA fourteen (14) days written notice of termination. (*Id.*)

Once S2LA received Upofloor's notice of termination, it began to claim that it was not under any contract because the Agreement terminated in 2014. (*Id.*) S2LA also claimed that it was entitled to: (1) several hundred dollars in commissions on future sales based on its previous efforts to market Upofloor products in the SCA; and (2) 2.5% of all U.S. sales made to Kaiser. (*Id.* ¶¶ 24, 26.) For its part, Upofloor alleges that it paid all commissions due to S2LA for sales made in accordance with the Agreement, and that it never paid S2LA any commission based on a flat percentage of all sales made to Kaiser. (*Id.* ¶¶ 13, 26.) Upofloor also alleges that it did not obtain sales from Kaiser as a result of any significant efforts on S2LA's part, but rather as the result of the multiple contracts that Upofloor has with Kaiser nationwide (*Id.* ¶ 28.) Importantly, Upofloor maintains that the Agreement remained in effect until it was terminated in 2015, and that Upofloor does not owe S2LA any compensation for sales that Upofloor did not attain prior to termination of the Agreement. (*Id.* ¶¶ 13, 27, 29.)

Based on the foregoing facts, Upofloor brought suit against S2LA on February 3, 2016.[2] (Doc. 1.) In its Complaint, Upofloor seeks: (1) damages arising from S2LA's purported breach of the Agreement in failing to use its best efforts to market and sell

---

[2] Due to insufficient allegations regarding the Court's subject matter jurisdiction, the Court dismissed Upofloor's initial complaint *sua sponte* with leave to amend. (Doc. 3.) Upofloor then filed an Amended Complaint, which still contained insufficient jurisdictional allegations. (Doc. 8.) The Court again dismissed Upofloor's Amended Complaint and ordered Upofloor to show cause why this action should not be dismissed for want of subject matter jurisdiction. (Doc. 9.) Upofloor responded to the Court's Order (Doc. 10), and filed its Second Amended Complaint (Doc. 12). Upon review of the Second Amended Complaint, the Court finds that Upofloor correctly asserts subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (*See id.* ¶¶ 2, 3.)

Upofloor's products; and (2) declaratory judgment as to the parties' rights and obligations under the Agreement. (Doc. 12.) In the instant motion, S2LA moves to dismiss the Complaint for: (1) failure to state a claim upon which relief can be granted; (2) lack of personal jurisdiction; (3) improper venue; and (4) *forum non conveniens.* (Doc. 15 ("**MTD**").) Upofloor responded (Doc. 26), and the matter is ripe for adjudication.

## STANDARD

The Federal Rules of Civil Procedure sets forth minimum pleading requirements. Rule 8 requires that a complaint consist of simple, concise, and direct allegations and a short and plain statement of the claims. Fed. R. Civ. P. 8(a)(2), (d)(1). When a complaint does not comply with minimum pleading requirements or otherwise "fails to state a claim to relief that is plausible on its face," the defendant may seek dismissal of the complaint under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009).

A complaint states a plausible claim if it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Courts must resolve a Rule 12(b)(6) motion based solely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). Further, courts must accept all well-pled factual allegations—but not legal conclusions—in the complaint as true. *See id.*

## DISCUSSION

## I.     Failure to State a Claim

S2LA first argues that Upofloor's Complaint should be dismissed because: (1) the

Agreement terminated on December 31, 2014; and (2) Upofloor has failed to allege sufficient facts demonstrating that S2LA breached the Agreement. (Doc. 15 at 2–8).

### A.    Termination of the Agreement

S2LA claims that the Agreement terminated on December 31, 2014. In support of its position, S2LA relies on a letter Upofloor's Vice-President, Jeff Collum, sent to S2LA Representative, Reade Palmer ("**Palmer**"). (Doc. 15-1, p. 1 ("**Letter**"). The Letter was purportedly sent with the proposed Agreement, and states in pertinent part:

> Reade,
>
> Attached is an agent agreement for UPOFLOOR that is dated October 1, 2013 and is considered effective through December 31, 2014. It is our standard agreement that will normally run annually, but has been formatted from now to the end of 2014.
>
> . . .
>
> Please sign two copies (one will be returned to you) of this agreement and initialize the map and budget and return to me via UPS ground . . . .

(*Id.*)

Upofloor contends that Letter should be construed as part of the Agreement because "documents and agreements contemporaneously exchanged by the parties are construed together as part of a single contract." (Doc. 15, p. 4.) In support of its contention, Upofloor cites to *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1268 (11th Cir. 2015). S2LA also relies on the declaration of Palmer, in which he states that:

> In January 2015, two representatives of S2LA, Reade Palmer and Adam Palmer, met in Las Vegas with Mr. Heeter and Sean Swanson, Upofloor's President, to discuss the Upofloor-S2LA relationship going forward. At that meeting, both Upofloor representatives acknowledged that the 2013 Agreement had expired, and they committed that Upofloor

would send S2LA a new agreement to be signed by the parties.

(Doc. 15-1 ¶ 10 ("**Palmer's Declaration**").

S2LA is correct that multiple agreements are generally construed together as a single contract when they are "executed by the same parties, at or near the same time and concerning the same transaction or subject matter." *Yellow Pages Photos, Inc.*, 795 F.3d at 1268. However, it is far from clear whether the contracts rule articulated in *Braggs and Yellow Pages* would even apply to the Letter and Palmer's Declaration ("**the Documents**"). Although the Letter explicitly refers to a proposed Agreement, neither Document is dated or executed by both parties. (*See* Doc. 15-1.) Moreover, the Agreement contains a merger clause which explicitly provides that "the Agreement constitutes the entire understanding and agreement of the parties . . . , and any and all prior agreements, understandings or representations are hereby terminated and canceled in their entirety." Therefore, at this stage, the Court finds no basis to construe the Letter and the Agreement as a single contract.

Furthermore, it would be improper for the Court to consider S2LA's submissions at this juncture. In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), courts limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Neither of the Documents were attached to the pleadings or referenced in the Complaint, and their contents are clearly in dispute. Thus, the Court limits its consideration to the allegations of the Complaint, and the contents of the Agreement, which is central to and referenced throughout the Complaint (Doc. 26-1).

Although the Agreement contains no termination date, it provides each party the right to terminate the Agreement "by providing written notice not less than [fourteen] 14 days prior to the date of termination." (Doc. 26-1 ¶ 4; Doc. 12 ¶ 10.) Based upon the well-pled allegations of the Complaint, the Agreement remained in full force and effect until it was terminated by Upofloor pursuant to its terms in December 2015. (*Id.* ¶¶ 23, 40.) Accepting these allegations as true, the Court cannot reasonably conclude, as argued by S2LA, that the Agreement terminated in December 2014.

For the foregoing reasons, the Court finds that S2LA's argument is more appropriate for summary judgment. Accordingly S2LA's motion to dismiss on this ground is due to be denied.[3]

## B.    Breach of the Agreement

S2LA also moves to dismiss Upofloor's claim for breach of contract on the ground that Upofloor "fails to allege how S2LA purportedly breached the Agreement while it was in effect in 2014, and . . . fails to apprise S2LA of the specific manner in which its performance failed." (Doc. 15, p. 15.) The Court disagrees.

To state a claim for breach of contract, a plaintiff must allege that: (1) a valid contract exists; (2) a material breach occurred; and (3) damages resulted. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006)). The plaintiff need not, however, plead detailed and particular facts to support a claim for breach of contract. Rule 8 sets a very low threshold for determining the sufficiency of facts in the statement

---

[3] In reaching this conclusion, the Court notes that the cases cited by S2LA decided similar issues *after* the motion to dismiss stage. *See e.g. Yellow Pages Photos, Inc.*, 795 F.3d at 1268; *Clayton v. Howard Johnson Franchise Sys., Inc*, 954 F.2d 645, 648 (11th Cir. 1992); *Quix Snaxx, Inc. v. Sorenson*, 710 So. 2d 152, 153 (Fla. 3rd DCA 1998).

of a claim and requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This standard requires the plaintiff to plead just enough to give the defendant fair notice of "what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Here, Upofloor alleges--and S2LA does not dispute--that the Agreement was a valid contract. (Doc. 12, ¶ 9.) Upofloor further alleges that, under the Agreement, S2LA had a duty to use its best efforts to promote and sell Upofloor's products in exchange for a commission on completed sales. (*Id.* ¶¶ 11–12.) As part of contract, S2LA agreed that a reasonable sales budget for 2014 would be $348,000.00 if it used its best efforts. (*Id.* ¶ 14.) According to the Complaint, Upofloor paid S2LA all commissions due for sales made through December 2015. (*Id.* ¶ 13.) However, because S2LA purportedly failed to use its best efforts to promote, market, and sell Upofloor products (*id.* ¶¶ 15–23), Upofloor suffered damages in "the form of lost sales." (*Id.* ¶¶ 16–18, 34, 35.)

The Court finds that these allegations, when accepted as true, sufficiently state a cause of action for breach of contract and provide S2LA with sufficient notice of the grounds upon which its claim rests. Accordingly, S2LA's motion to dismiss for failure to state a claim is due to be denied.

## II.   Personal Jurisdiction

In the Complaint, Upofloor suggests that the Court has personal jurisdiction over S2LA because the "parties agreed to the exclusive jurisdiction and venue of Florida state and federal courts for any claims arising out of or relating to the [A]greement between the parties." (Doc. 12 ¶ 4.) In support, Upofloor references a forum selection clause in the Agreement, which states, in pertinent part:

> This Agreement will be governed by, and construed in accordance with, the laws of the State of Florida, without regard to principles of conflicts of law. The parties hereby irrevocably consent to the exclusive jurisdiction of any Florida or United States Federal Court sitting in Florida over any action, suit or proceeding arising out of or relating to this Agreement, and the parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard in such Florida or Federal court.

(Doc. 26-1 ¶ 12.1 ("**FSC**".).)

Despite entering into the Agreement, S2LA argues that the FSC is insufficient to confer personal jurisdiction over S2LA in this Court because S2LA does not have sufficient minimum contacts. (Doc. 15, pp. 8–10.) In support, S2LA relies on *Matrix Z, LLC v. Landplan Design, Inc.*, 493 F. Supp. 2d 1242, 1246–1248. (S.D. Fla. 2007). (Doc. 15., p. 8–9.) However, S2LA's reliance on *Matrix* is misplaced. In *Matrix*, the Court did not address whether an FSC alone could confer personal jurisdiction upon a Florida court. Rather, the Court merely addressed whether the parties contract "itself contains a forum selection clause." *Matrix Z, LLC*, 493 F. Supp. 2d at 1246–1248. Second, it is well-established under Florida law, that "if certain requirements are met, parties may, by contract alone, confer personal jurisdiction on the courts of Florida." *Jetbroadband WV, LLC v. Mastec N. Am., Inc.*, 13 So.3d 159, 162 (Fla. 3d DCA 2009) (noting that the Florida Legislature "allowed contracting parties to dispense with the more restrictive Florida long-arm limitations" by promulgating sections 685.101 and 685.102 of the Florida Statutes).

To confer jurisdiction on the courts of Florida, an agreement must:

> (1) include a choice of law provision designating Florida Law as the governing law, (2) include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida, (3) involve consideration of not less than $ 250,000, (4) not violate the United States Constitution, and (5) either bear a substantial or reasonable relation to Florida or have at

> least one of the parties be a resident of Florida or incorporated under its laws. Thus, as long as one of the parties is a resident of Florida or incorporated under its laws, and the other statutory requirements are met, sections 685.101–.102 operate irrespective of whether the underlying contract bears any relation to Florida and notwithstanding any law to the contrary.

*Jetbroadband*, 13 So.3d at 162 (citing Fla. Stat. §§ 685.101 and 685.102).

Here, the first, second, and fifth requirements are easily met because the Agreement: (1) includes a choice of law provision designating Florida Law as the governing law (Doc. 26-1 ¶ 12.1); (2) includes a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida (*id.*); and (3) Upofloor's principal place of business is in Altamonte Springs, Florida (Doc. 12, ¶ 1). However, S2LA argues that the Agreement does not satisfy the $250,000 consideration threshold (Doc. 12, p. 9–10), and that the Court's exercise of jurisdiction over S2LA would violate the Due Process Clause (*id.* at 10–12).

With respect to its first argument, S2LA maintains that the only contemplated transactions between the parties under the Agreement was the payment of commissions by Upofloor to S2LA. (*Id.* ¶¶ 9–10.) S2LA asserts that those transactions involved no more than $69,600, and not the $348,000 Upofloor expected to receive from third-party sales. (Doc. 15, p. 9–10.) The Court disagrees.

Florida case law provides little guidance on the factors the Court should consider in determining whether Upofloor has satisfied the minimum consideration requirements under § 685.101. However, based on a plain reading of the language in §§ 685.101 and 685.102, it is clear that the threshold can be met even if the agreement is "in consideration of ***or relating to*** any obligation arising out of a transaction involving in the aggregate not less

than $250,000.00." *See* Fla. Stat. §§ 685.101, 685.102 (emphasis added); *see also Elandia Int'l Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1335-1336 (S.D. Fla. 2010) (explaining that "cash consideration or an obligation related to the particular transaction can satisfy the threshold requirement in §§ 685.101-102"). In other words, even if the parties to an agreement do not exchange at least $250,000, § 685.101 may still apply if, an aggregate of more than $250,000 arises from transactions related to the contract.

Here, Upofloor alleges that under the Agreement, S2L was obligated to, *inter alia*, "use its best efforts to market and sell Upofloor products." (Doc. 12, p. 10.) "As part of S2LA's best efforts obligation, S2LA agreed that a reasonable sales budget number for Upofloor products in 2014 was $348,000." (*Id.* ¶ 14.) S2LA does not dispute that it projected sales in the amount of $348,000, nor does it dispute that its sales obligations exceeded $250,000. Therefore, the Court finds that the Agreement satisfies the consideration requirement under §§ 685.101–102. (Doc. 12, ¶¶ 14, 16).

With respect to its second argument, S2LA maintains that exercising personal jurisdiction over S2LA would violate its rights under the Due Process Clause. The Court again disagrees.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Generally, the constitutional requirement is "satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414

(1984) (quoting *Int'l Shoe*, 326 U.S. at 316).

Importantly, however, the U.S. Supreme Court has held that the minimum contacts test is met, in the commercial context, if a forum selection clause exists that is "freely negotiated" and is not "unreasonable and unjust." *Burger King Corp*, 471 U.S. 462, 473 (1985) ((citing *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972)). In order for a forum-selection provision to be unreasonable and unjust, the moving party must show that the contractual forum is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *The Bremen*, 407 U.S. at 18.

Here, S2LA does not dispute that the FSC was freely negotiated, nor does it argue that the FSC is unreasonable or unjust. Instead, S2LA simply argues that it does not have sufficient contacts to be hauled into court in Florida. (Doc. 15, p. 11.) Specifically, S2LA asserts that: (1) it is not an owner, officer or director of any active Florida corporation and is not a member or manager of any active Florida LLC; (2) it has never committed a tortious or fraudulent act in the state of Florida; and (3) it has no employees in Florida. *Id.* at ¶ 6. However, S2LA's assertions concerning its lack of business, offices, and employees in Florida, are insufficient to overcome the presumption in favor of upholding the FSC at issue. S2LA does not assert that Upofloor engaged in fraud, undue influence, or overweening bargaining power to include the FSC in the Agreement. S2LA also fails to establish that Florida is "gravely difficult or inconvenient" forum. Therefore, Court finds that its exercise of personal jurisdiction over S2LA is constitutionally reasonable. Accordingly, S2LA motion to dismiss for lack of personal jurisdiction is due to be denied.

### III.   Venue and *Forum Non Conveniens*

S2LA also moves to dismiss the Complaint on the ground that it contains insufficient allegations of fact to demonstrate that venue is proper in the Middle District of Florida. (Doc. 15, p. 12.) In particular, S2LA contends that venue is improper in the Middle District of Florida because a substantial part of the events giving rise to Upofloor's claims occurred in California. (*Id.*) For similar reasons, S2LA argues that this action should be dismissed pursuant to the doctrine of *forum non conveniens.* (*Id.* at 12–13.) The Court rejects both arguments.

### A.   Venue

It is well-settled law that parties to a contract may bargain in advance to select the forum in which their disputes will be adjudicated. *The Breman*, 407 U.S. at 12–14. Thus, a forum selection clause is prima facie valid and should be enforced "absent a strong showing that it should be set aside." *Id.* at 15. As explained above, the burden is on the party resisting enforcement to "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.*

Upofloor alleges, and the FSC plainly demonstrates, that the parties agreed to: (1) the application of Florida law; (2) the exclusive jurisdiction of Florida courts; and (3) waive any objections to jurisdiction and venue. (Doc. 26-1, ¶ 12.1.) Moreover, S2LA has failed to carry its burden of establishing that the agreed forum is sufficiently inconvenient, or that this suit presents "the type of exceptional situation in which judicial enforcement of a contractual choice of forum clause would be improper." *In re Ricoh Corp., 870 F.2d 570, 574 (11th Cir. 1989). As such, the Court declines to set aside a contractual provision that appears to have been properly bargained for and relied upon by Upofloor when filing this

action. Accordingly, S2LA's motion to dismiss on the basis of improper venue will be denied.

### B. *Forum Non Conveniens*

For similar reasons, the Court will also deny S2LA's motion to dismiss for *forum non conveniens.* The doctrine of *forum non conveniens* permits a court to decline to exercise jurisdiction when it appears that the convenience of the parties and the interests of justice weigh in favor of trying the action in an alternative forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). "In the typical case not involving a forum-selection clause, a district court considering a . . . *forum non conveniens* motion . . . [would] evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause." *Id.*

First, "the party defying the forum selection clause, . . . bears the burden of establishing that . . . the forum for which the parties bargained is unwarranted." Second, the court may not consider the parties' private interests. *Id.* at 582. Indeed, "[w]hen parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* Therefore, the court must assume that the parties' private interests "weigh entirely in favor of the preselected forum." *Id.* The court may consider arguments about *public* interest factors,[4] but such factors will rarely defeat a

---

[4] Public interest factors warranting dismissal on the ground of *forum non convenience* include: (1) administrative difficulty due to court congestion; (2) controversies so localized that there is a strong local interest in deciding the matter in

FSC. *Id.* The practical result is that the parties' agreement regarding the proper forum for dispute resolution will be "given controlling weight in all but the most exceptional cases." *Id.* at 581.

As the party defying the FSC, S2LA fails establish that extraordinary circumstances unrelated to the convenience of the parties clearly favor dismissal under the doctrine of *forum non conveniens*. Rather, S2LA argues—in conclusory fashion--that the *forum non conveniens* doctrine applies to this case because: "(i) a majority of the material witnesses to Upofloor's purported claims are in California; (ii) a California court would indisputably have jurisdiction over the whole case and the parties[;] and (iii) there would be no undue inconvenience or prejudice to the parties in litigating this matter in California." (*See* Doc. 15, p. 12–13). S2LA's naked assertions, however, provide no real assessment of the public interest factors identified in *Atlantic Marine* or *Piper Aircraft*. As such, the Court gives controlling weight to the FSC, which preselects Florida as the proper forum for litigating disputes arising from the Agreement. Because Upofloor has filed its suit in the Middle District of Florida, venue is proper and S2LA's motion is due to be denied.[5]

---

the alternative forum; (3) that the alternative forum is more suited to apply the applicable law; (4) the avoidance of unnecessary problems with respect to conflict of laws or the application of foreign law; or (6) the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft*, 454 U.S. 235, 241, n.6 (1981); *Atl. Marine*, 134 S. Ct. at 581 n.6.

[5] The Court notes that its decision is supported by a decision in a related action involving the same parties in this case—*Squared Sustainable Surfaces LCC, v. Upofloor Americas, Inc.*, No. 2:16-cv-03354, Doc. 23 (C.D. Cal. Aug. 1, 2016) ("**S2LA Action**"). There, the U.S. District Court for the Central District of California conducted a similar analysis regarding the parties' Agreement. In that action, S2LA asserted a quantum meruit claim to recover the reasonable value of the services it rendered to Upofloor in 2015. *Id.* Upofloor moved to transfer the S2LA Action to the Middle District of Florida

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.     Defendant's Motion to Dismiss Second Amended Complaint and Incorporated Memorandum of Law (Doc. 15) is **DENIED**.

2.     Defendant shall have seventeen (17) days from the entry of this Order to file an Answer to the Second Amended Complaint.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on October 12, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

---

pursuant to 28 U.S.C. § 1404(a) and the FSC. *Id.* S2LA opposed Upofloor's motion, arguing that because its claims were not based on the Agreement, the FSC did not apply. *Id.* However, the district court granted Upofloor's motion, finding, *inter alia*, that: (1) S2LA's claims bore a "significant relationship" to the Agreement; (2) the FSC was valid; and (3) no extraordinary circumstances existed to defeat Upofloor's motion to transfer. *Id.*